We'll hear argument first this morning in case 17-419, Dawson v. Steager. Mr. Rosenberg. Mr. Chief Justice, and may it please the Court, the State's exemption violates Section 111 and this Court's precedents because it facially discriminates based on the source of the compensation, as only retirement benefits from State retirement plans are exempted, and the State cannot show any significant differences between retired employees of the U.S. Marshals Service and the exempted State retirees because the State concedes that their job duties are the same. This Court should reverse. What do we do with the fact that the job duties of marshals overlap with the two categories of the State? They overlap with the people paying less tax and with other law enforcement agents who pay more tax. So how do we go about identifying who they're most similar to? Two responses, Justice Sotomayor. The first is the inquiry is in who they're most similar to. Under Davis, so long as the plaintiffs here, the U.S. Marshals, are similar to the exempted State employees, that's enough. That's because Section 111 provides an individual right against discrimination for Federal employees. And so if there is a close case, for example, if there really were identical State employees, some who were exempted and some who weren't, that case would go to the are treated more favorably than the Federal employees. But what if there are two groups of State employees, let's say Group 1 and Group 2, and they're similarly situated to each other, and then a group of Federal employees who are similarly situated to both Group 1 and Group 2? In that situation, does the State have to treat the Federal employees the same as the most favored group if Group 1 has a favorable tax treatment, or does the State in that example have discretion, since the Federal employees are similarly situated to both Group 1 who gets the favorable and Group 2 who does not? Justice Kavanaugh, the State has to treat the Federal employees the same as the favored State employees. The State has discretion to treat its own employees differently for various reasons, including arbitrary reasons. But once it does so, through State taxation, the State has to treat the Federal employees as well as the favored State employees. Alito, I don't follow why that is so. If the – if you have two categories of State employees and they're very similar and they're treated differently, and then you have a category of Federal employees who are similar to both of those categories of State employees, wouldn't you have to determine which group of State employees are most or more similar to the Federal employees? Otherwise, I don't see how it's discrimination. So, Justice Alito, I don't think you have to determine that because, again, it's an individual right against discrimination. If this Court looks to the precedents like the ICC and railroad precedents from the 1930s, looks at Alabama v. CXX, when you're actually trying to figure out who you're comparing it to, you look at who – the language of the statute, the purpose of the statute, the context of the statute. And here, again – But an anti-discrimination provision doesn't necessarily require a most favored nation clause, and as I understand your answers to Justices Kavanaugh and Alito, you're saying there's a most favored nation requirement. Justice Kagan, two responses. One, typically you don't have a most favored nation requirement, as you note. Two, I'm not sure it's most favored here. It's only that where the State has drawn sort of an arbitrary distinction and it's got effectively identically situated State employees, one that gets the exemption, one that doesn't, and the Federal employee is similar to both, that this sort of comes in where the tie here goes to the Federal government. Ginsburg. Ginsburg. I take it the police office, firefighters and others are exempt? A few are not exempt. Within the State category, the State's two categories, which one is the larger, which one is more like the Federal Marshal's? Justice Ginsburg, the larger group, as far as we can tell and the record reflects, is the State law enforcement personnel who are exempt. It includes all State troopers. It includes all deputy sheriffs, for example. If we're actually comparing Mr. Dawson, he's plainly most like a deputy sheriff. Under West Virginia law, sheriffs and deputy sheriffs have the same authority. The only non-exempt individual that the State has tried to compare Mr. Dawson to is in its brief in this Court, it tried to compare him to sheriffs. But sheriffs and deputy sheriffs have the same job duties, have the same authority under West Virginia law. Mr. Dawson, in fact, was a deputy sheriff in West Virginia before he became a deputy United States Marshal. Well, but he was different things. He's not just somebody who was working in the Marshal's service. He was for a while. And then maybe you have an argument with respect to the other State. But he was also the U.S. Marshal. And that is not like the cop on the beat. I would suspect he's not accompanying fugitives when they move from one place – I mean prisoners when they move from one place to another. His job is, you know, more policy, administrative. Does some of his retirement money come from his time as U.S. Marshal? I believe some of it does, but some also from when he was deputy. Well, what do you do in that situation? I mean, we have different comparators on the State side, but he himself embodies at least arguably two entirely different types of job. He embodies multiple jobs, but his basic duties as a law enforcement officer didn't change. He had the same responsibilities as a law enforcement officer, whether he was doing the same thing on a daily basis, I don't think is the proper answer. I don't think that's right. His responsibilities didn't include tracking down fugitives or the other things that somebody, you know, at the sort of operational level of the service does. I mean, would you say the Attorney General would qualify in this situation? He has law enforcement duties. Probably not, but that's a different circumstance. On pages – on the J.A. pages 176. Well, how different? I mean, a marshal is appointed by the President, right? Yes. And confirmed by the Senate, right? That's true. Well, that seems to me a little bit different than, as I said, you know, someone who's day one and starting at the bottom level at the marshal service. Well, he did work for quite a while as a deputy United States marshal. Well, yeah, but I'm wondering whether or not we should be parsing out it. Part of his retirement seems similar and part not. Well, I think it's all similar, because as a United States marshal, even presidentially appointed, he still had the same law enforcement authority as the covered State employees. And this is the problem with the State's test. The inquiry shouldn't be is he identical to certain State employees. It's whether he's similar enough that discriminatory tax treatment is justified. And the State can't justify discriminatory tax treatment just based on whether he has some additional administrative responsibilities. But his basic law enforcement function is the same. And perhaps the most important point, Mr. Chief Justice, is that the State has repeatedly conceded throughout the litigation that the job duties are the same. Is the head of the marshal service covered? In other words, not one of the State marshals, but the head of the marshal service. The U.S. marshal service? Yes. I believe so. So his duties are the same as somebody who's on his first day? You mean the head of the marshal service nationally? Yeah. Well, I don't know that that person's in West Virginia, but I think there would be an argument that he was. Well, he lives somewhere. Yeah. I mean, I think there may be an argument that he is. I think that's a different case. It would depend on the actual facts of the job duties. I think in this case, whether it was deputy U.S. marshal, U.S. marshal, or when he was a deputy sheriff, pages JA 176 and 177 show that Mr. Dawson had the same job duties. The State's never contested that. And indeed, as a U.S. marshal, Mr. Chief Justice, Mr. Dawson testified at those pages that there were two critical similarities among others. One was that he was entrusted to enforce West Virginia law as a U.S. marshal. And the second was that for fugitive task forces, he could deputize the very same State troopers and deputy sheriffs who are exempted under the West Virginia plan. Could I go back to the two categories? Yes. Let's assume they're identical. All right? And I know that you're arguing that they're not. And this may be an issue if we get to it to remand, okay? But assuming they were, and if the difference was as articulated by respondents here, one paid more than the other to the pension plan, so they, the State wanted to be more generous to those who paid more, as I think is the case here. Why is that any different in kind to our suggestions in Davis and in other places that if a scheme relied on the benefits paid out, anybody who made less than $15,000 a year in retirement benefits was exempt, but someone who made more wasn't? Why is that different in kind to this situation? Several responses, Justice Sotomayor. First, it's different in kind here because it's not the line the State drew. The State didn't draw a line based on benefits. They could have. They could have done a facially neutral scheme that perhaps exempted a certain contribution rate or a certain benefit payout, but that's not what they did here. What difference does that make? I mean, let's assume a situation where the State says State employees who are in one of these four plans, and let's further assume that everybody in those four plans receives a lesser benefit or alternatively contributes a greater percentage of their salary to the plan. So, you know, it's the State has just decided, look, this is a convenient way of identifying these people, but, in fact, all the people in these plans have that characteristic which makes them different from the Federal employees, that they contribute more or that they receive less in other benefits. Because that's still facially discriminatory, Justice Kagan. If the State had actually done a neutral criterion and said benefit levels, even if no Federal employee is then qualified, it would give the Federal government the opportunity to redo its benefit plan so that they could potentially qualify under the State exemption. Here, there's no such opportunity, so it's still facially discriminatory. And that's what Section 111 prohibits. The State could have done a number of things here, but it didn't. The things that the State proffers in its brief as these supposedly distinguishing financial characteristics, the State concedes they have to be applied even-handedly to be able to be legitimate differentiators between tax winners and tax losers. But if you look at the record, pages J.A. 28 and 29, the chart there, it makes it abundantly clear that none of these are even-handedly applied even within the State. So there are some plans with higher benefits that are exempted, some not. There are some plans where there's entitlement to Social Security that are exempted, some not, some higher benefit rates. Kagan. My hypothetical was meant to take that off the table, to say, assuming that that's not true. And the State really has categorized precisely as to benefit levels or contribution levels, but not in those terms. You're, you know, not in those terms. And you're saying that in itself is impermissible. Waxman. Right, because it's facially discriminatory. And it doesn't provide any opportunity for any Federal employees to ever be part of it. It would be different if it were done as a facially neutral law. In fact, most facially neutral laws, regardless of whether there are a meaningful number of Federal employees who qualify or not, would likely pass scrutiny under Section 111. The first and critical problem here is that this is facially discriminatory. The second problem is what I mentioned, that the line the State drew is based on job duties. The job duties are identical, and the financial characteristics the State proffers were not even-handedly applied to the State and plainly weren't involved in the line that the State actually drew. The State also argues that the lower court opinion was correct, notwithstanding Davis, because only a fairly narrow category of State employees are exempted. But this argument was expressly rejected in Davis, and it can't carry the day here. In Jefferson County, for example, this Court looked at a fairly narrow category, State judges versus Federal judges, and only upheld that taxation scheme because the Federal judges and State judges were treated the same. And indeed, that exemption was facially neutral, because there were people who got the exemption who were State employees and people who didn't who were State employees and the same. Some Federal employees got the exemption and some didn't. The State also argues that there has to be undue interference with the Federal government, but that also has never been the test. That was rejected in Davis as well. Certainly, if you look at United States v. Mexico in footnote 11, the Court makes very clear that you could have interference with the government or discrimination, either of which invalidates a scheme under section 111. Finally, the State argues that we've talked about that you have to compare to the most comparable individual. We've already mentioned that it really isn't that inquiry. The inquiry is one of similarity. Is the State retiree or employee similar enough to the Federal retiree or employee that there shouldn't be discrimination?  Breyer. I mean, suppose that the person who's drafting this bill for the State is trying to they think that the police officers and the others really, they aren't paid very much, and it's a particularly dangerous job, and you know those characteristics. So they think they should give them a tax break, and then someone says, well, what about the Federal marshals? They do the same thing. And then the person replies, yes, they do, but they get paid a lot more, you say. And so the Feds pay them a lot more than we pay the State people. So that's why we're doing it. Okay? Is that okay or not? It's not for three reasons, Justice Breyer. First, it's facially discriminatory. Secondly, the motive itself doesn't matter, as this Court said in Davis. And third, the State could always extend that benefit to Federal employees. For example, in this case, section 12c-5, which is the broader exemption that only gets a small, a smaller exemption, was specifically extended to Federal employees two weeks after the Davis decision, but the State didn't extend 12c-6, and therefore it's facially discriminatory. If I could reserve the rest of my time, Mr. Chief Justice. Roberts. Thank you, counsel. Mr. Hewson. Mr. Chief Justice, and may it please the Court. We agree with Petitioner that this West Virginia tax exemption here is facially discriminatory, and that, I think, is the critical feature that really gets to the heart of some of the questions that several Justices have posed this morning. It's instructive, I think, to focus on the difference between the tax that the Court struck down in Davis and Barker and the one that the Court upheld in Jefferson County. Alito, could you just say what you mean by facially discriminatory? Absolutely, Your Honor. A tax is facially discriminatory when it's not open to any Federal employees ever, regardless of what job duties they perform or what their benefit level is or what their contribution rate is. And that was true of the tax statutes in Davis and Barker. It's the opposite of the structure that the Court upheld in Jefferson County. If that's the problem, why were you suggesting that we remand this? It would just seem as though we should decide it, if that's the problem. Well, I think that even when a tax is facially discriminatory, Your Honor, there is going to be a second question, which is, is this particular employee actually suffering discrimination? And I think it gets to one of the questions that you were asking, my friend, in support of Petitioner, which is, if you imagine, for example, that Mr. Dawson was a Federally employed teacher as opposed to a law enforcement officer, this tax exemption is still facially discriminatory. But Mr. Dawson, in that hypothetical, is not himself suffering discrimination. He's the wrong plaintiff. And I also think that's the problem. So what precisely would you say would be open on remand? You're suggesting not reverse, but vacate and remand. Remand so that the West Virginia court could consider what? Well, the West Virginia State court never undertook the analysis of whether Mr. Dawson is materially different from the Federal employees or, excuse me, from the State employees who benefit from the exemption. Now, if the court feels like it has all of the information it needs, West Virginia has now come forward in its brief and put forward several purported justifications that it thinks can sustain its law. We agree with Petitioner that we don't think that the record bears out any of those. And if the court thinks it has enough to decide the case, we're comfortable with it. Well, it's, I think, related to your point. Where are you on the dialogue I had with Mr. Rosenberg? Are the benefits that, say, your boss, the Attorney General, receives exempt? Think carefully before answering. The government is much more interested in the courts, lower courts, applying the correct legal rule than it is in exactly where a State court draws the line. Well, I'm sure, but I'm more interested in how you're going to carry out that division. In other words, say, facially discriminatory, but with respect to what duties, what category of duties? Well, again, I think it depends on how the State has drawn the class. States are entitled to have whatever kind of exemptions they want. They just have to make them available on equal terms to Federal employees. And that's exactly the structure of this tax in Jefferson County, and it's the reason why the Court upheld the tax in Jefferson County. All Federal judges, all State judges were treated alike. Other persons in other employees' attorneys were treated alike, whether it was State and Federal. And I think that that means that even if the distinctions that the State is drawing are somewhat arbitrary, that is fine as long as the State is making an effort to afford equivalent treatment to State and Federal employees alike. Kagan. But I guess what I don't understand about what you think ought to be left open on remand is if you think that the prime evil of this legislation is that it's not facially neutral, that a Federal employee can't be a part of these State plans, so could never be treated in the same way, then all the State justifications like these people get fewer benefits, these people pay more and make more of a contribution, all of that, do I understand your position correctly, is just irrelevant. You know, the State court could find that these people get less benefits and that these people, the State employees, make a greater contribution and yet not be able to rule for the State, is that correct? It's not quite correct, Your Honor, in this respect. The critical question is, is this plaintiff suffering discrimination on the basis of source of pay? And so to return to your hypothetical from the last session, if you imagine that it turns out that the State actually has selected only those plans where the employees say contribute less than 5 percent to their retirement and it has put in the, you know, disfavored category all employees who contribute more than 5 percent. If Mr. Dawson is in the disfavored class, if it turns out that he lines up with the class of workers that West Virginia is not affording the benefit, he has not suffered discrimination. Now, at the time we wrote the court orders of the State. Kagan No, but even if he is in the favored class, you're saying he's not no, I, I, okay, I get it, I get it. Alito What if he's, what if he's equivalent to both the favored and the disfavored class, then what? If, if there's really no basis at all on which to, to make a distinction between who the State has selected and, and who it has disfavored. Now, again, we don't think there are really any cases like that, but in that, in that sort of unusual situation, I do think Mr. Dawson would be entitled to the exemption. And the reason is that the State would not be able to meet its burden to defend its facially discriminatory law. Alito Let me try this out. Let me try this out and see if this is close to what you're saying. Where you have a variety of categories of State employees, and some get the benefit in question, and some don't get the benefit in question. So the first step would be you compare all the categories of, of the relevant categories of State employees, and you identify the characteristics that distinguish the employees in the favored class from the characteristics of those in the disfavored class. And once you've done that, then you ask whether the Federal employees have those characteristics. That would be step two. But the, the, I think even when you do that, you will vary, unless this, unless the States get to do just about what any, whatever they want, you will have situations where the Federal employees are pretty similar to the ones in the favored class, but they're not identical. And then you've got a judgment call. And I don't quite know how to resolve that. Now, is this, is this right? Is that, or am I off base with this? Fisherman, Your Honor, I think you have it exactly right. And, and I understand that there are going to be, in some cases, at the margins, difficult questions where it's hard to apply the tests that the Court set out in Davis. We're much more concerned about the States actually undertaking that effort in good faith. And what we, the problem that we have with the West Virginia Supreme Court's opinion is that it never even attempted that inquiry. It never attempted to sort out whether these Federal employees are more similar to the State employees who get the exempted class. Sotomayor, could you? Sotomayor, can you go back and answer Justice Kagan's earlier question, which is what are, what are we remanding for? I, I do think that there's been a concession that the job duties of Federal marshals are similar to the exempted class. So what's left? You, you said something to her that confused me. I thought you said if the State had actually differentiated their employees on the basis of the contribution they made or the benefits they received, then the scheme would be okay if the Federal marshals didn't, well, they would never make the contribution. So, but maybe they have different benefits. Right. That's what the State has argued, Your Honor. They've attempted to say that the logic of their exemption, although it's facially discriminatory, actually turns on things like contribution rates or whether the employees contribute to Social Security. If the record supported that argument, and I think that some of the, several of those arguments are being made for the first time in this Court, if the record supported that, the State could potentially defend its law on this basis. Now, we don't. Kagan. Kagan.          Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan.     Kagan. Kagan.  Kagan. Kagan. Kagan. Kagan. How would union practice refer to this provincial complaint on remand in defense of a decision for West Virginia? How would that opinion read, a pro-West Virginia opinion on remand? If the, if the West Virginia Supreme Court found that, although the tax that's at issue here is facially discriminatory, the State actually drew the line to track a neutral criterion, like contribution rates or something. Everybody who contributes more than 6 percent gets the benefit, nobody who contributes less. Kagan. Well, that's a, that was exactly my hypothetical. Right. And your friend answered it the other way, and I, I, I thought that he answered it the other way because he said, even if they drew the line in exactly that way, the problem with this statute is that the Federal employees can't get into the State plans. It is facial, it is still facially discriminatory. It's still, it's still problematic, and States should not draw their laws that way. But if it turns out that the employee, Mr. Dawson, matches up exactly on that logic that the State has offered with the disfavored employees as a matter of State law, he is the wrong plaintiff. He is not suffering discrimination. Well, but that seems to me that you're looking at the State's purpose, and I thought the whole point was that the, you look just to the source of income. Well, you certainly do look to the source of income, Mr. Chief Justice, but I think you also look at, is Davis said, and, and cases like Barker said, we're going to look at what is the justification the State has put forward for its law. And if they've actually put forward a neutral justification, that's fine. States have a great deal of flexibility in what they can do with taxation. The one thing they can't do is discriminate and treat, by treating Federal employees worse than their State counterparts. Thank you. Roberts. Thank you, counsel. Ms. Singh. Thank you, Mr. Chief Justice, and may it please the Court. This Court's decision in Jefferson County demonstrates whatever else is required at the first stage of the intergovernmental tax immunity doctrine, at minimum, the challenging taxpayer must show that he is treated different from similarly situated State employees. And this Court consistently looks beyond labels, in the words of Jefferson County, beyond the State's name tag, to see how that challenger is actually treated. In this case, Petitioners have not made out that showing, because Mr. Dawson is treated the same as similarly situated State employees. This case is Jefferson County, where the Court used the first step of the analysis to determine whether or not the challenger is treated the same as the State employee. The Court below said, I think the Court below very explicitly said, the two exempt category and Federal marshals were similar. And they didn't even look at the comparison at all. They said the purpose was not to discriminate, so hence there was no discrimination. Your Honor, it is true that the State trial court found that Federal marshals have similar job duties to those who receive the exemption. The Court did not find that they do not also have similar job duties to those who do not receive the exemption. That's right, it didn't find that, so you can't rely on that. No, Your Honor. You have to defend its judgment, and I thought it based it on saying, if your purpose is to benefit your State employees, that's not discrimination. Now, that's a hard line for me to accept, because discrimination is treating someone differently, whether it's because you want to benefit someone else or harm another person, to me, seems irrelevant. Well, Your Honor, it is true that the West Virginia Supreme Court focused on the first step of the analysis, and there the Court did undertake a totality of the circumstances review. But it was simply taking this Court at its word in Davis, where this Court said that the Intergovernmental Tax Immunity Doctrine is coextensive with Section 111, and that that doctrine incorporates the entire history and purpose of that doctrine. And from the time of McCulloch, that doctrine prevents discrimination against the Federal Government. So the West Virginia Supreme Court focused on that particular aspect of the first step inquiry. The statute prohibits discrimination against an officer or employee because of the source of pay or compensation. The statute doesn't concern, are you burdening the Federal Government? The statute is quite explicit, but it prohibits discrimination against an employee because of the source of pay or compensation. Yes, Your Honor. It's discrimination based on source of pay or compensation. And we know that discrimination has to include discrimination that at some level interferes with government functions, because, again, that language in Section 111, this Court said, must be interpreted coextensive with the historical constitutional doctrine. Well, if that were true, then this would apply only when the discrimination the alleged discrimination affects a lot of employees. Because other than, in fact, how many employees would have to be affected before it would have any kind of tangible effect on the finances of the Federal Government? No, Your Honor. And that's why we said that this is part of the analysis of the first step. But in most cases, the more common similarly situated analysis will sort out these cases. That analysis, determining who the appropriate class is, that is another way of determining the sorts of discrimination that's at issue here. Well, I think that I understand your point. Just because there's discrimination, it's not necessarily discrimination on the basis of source, if you can find some other basis. And then you'd say it's based on the amount of contributions or whatever. But I understand Davis to talk about saying you don't get to do that. If you're saying, if you're Federal, you don't get it, they're going to assume that it's based on something that's not permissible. I mean, if your basis is something else, you ought to say that. You ought to say, we're, you know, people who have this percentage, contributions or whatever, and if the Federal employees don't qualify, they don't qualify. But as soon as you say it's you have to have the State retirement plan and not the Feds, I think the idea in Davis was, well, you kind of presume that that's based on discrimination based on, as they say, the source of income. No, Your Honor, that's not the appropriate analysis here, because in Phillips Chemical, which this Court relied on heavily in Davis, this Court expressly rejected the argument that a fact that, on its face, a statute targeted in that case specifically targeted those who dealt with the Federal government, that that was enough without more to find discrimination. Instead, the Court said the appropriate analysis was to consider whether the challenged taxpayer was, in fact, being treated different from similarly situated employees. And, of course, in Phillips Chemicals the Court said that that was not the appropriate analysis. Sotomayor, I think you're having the problem I did from the beginning, which is everybody breaks this down into two steps, but it really is one step. It's because you don't even get to this inquiry unless State and Federal employees are being treated different. That seems like a very light load to carry. The question is, are they similarly situated? Yes, Your Honor, that is the approach. And similarly situated in the sense of can you differentiate them on something other than the source of payment? Correct, Your Honor, and that's very clear. Not sure. It's a reason I think it's you can't do this, it seems to me, except in a very crude basis. There's dozens of differences between State employees, Federal employees. They categorize them differently. They have slightly different jobs. And if you're going to start looking at an individual basis, you just don't know. So why don't we take literally what it says? Is it the source of income, period? I mean, that it comes from the Feds. And if it does come from the Feds and they pay less, in roughly similar categories, you can't get beyond roughly. That's the end of it. So we don't see whether, in fact, the Feds are being paid more. We don't see, in fact, whether there's some other thing that distinguishes why you wanted to give this break to the State police. You have here virtually all the State police. They're in this, so they have the right to it. It's not just the State police. It's also the local police. It's everybody in law enforcement, almost. And they can get into it. And the Feds can't. Why isn't that just the end of it? Well, Your Honor, respect my dispute, the premise there. It's not true that most State law enforcement officers are eligible for this exemption. It's not? I had it. I said there was Federal. Sorry, there were the State people, the sheriffs, the head sheriffs, the local policemen. That's what I thought. And it says, I thought I read that it said that they were eligible. They're not? Your Honor, it says that they are eligible if they are part of a specific retirement plan that applies to police or firefighters. And who decides? Well, it's the particular retirement plan that they're part of. No, no, no. Who decides whether I am a firefighter or a local policeman? Who decides which plan I join? I understand, Your Honor. Who? No, I don't understand. I want an answer to the question. I understand your question. Yeah. It's their particular locality that decides. So the individual policeman can't decide. It has to be a vote or a municipality. Yes, Your Honor, which is true for many employees. They take the retirement benefits that are available. So how many local police are roughly in this program, and how many local police aren't? Your Honor, the state of West Virginia tax department does not keep those exact numbers. I wish I could give them to you. You can't give them to me at all? Well, what I can represent to you is that of the roughly 200 cities that have separate police, only 30 of them have a separate police retirement plan. Well, but I mean, you've got to figure out how many. I mean, if Charleston is one of the ones that does, I mean, maybe 10% of them don't. That statistic really doesn't tell us anything. Well, Your Honor, it does bring us back to the situation where there are some employees who have identical job descriptions who receive the exemption and some who don't. That indicates that there's something else that's doing the dividing line in that statute. Well, and to get back, and this is pertinent, I think, to your response to Justice Breyer and to me, how do you reconcile with your answer this language from Davis? In Davis it said, a tax exemption truly intended to account for differences in retirement benefits would not discriminate on the basis of the source of those benefits, as Michigan's statute does, whether it would discriminate on the basis of the amount of benefits received by individual retirees. So that's why, I mean, I'm concerned about the idea that, yes, it says the source. Is it Federal or State? But we really think it's something else, and Davis seems to say you can't do that. Well, Your Honor, first I would note that that language comes at the second step of the analysis, whether the burden shifts to the State to find significant differences between the State taxpayers. But even so, the question would simply be, what does the tax actually do on the ground? This Court has said in Phillips Chemical and in Jefferson County that the Court looks beyond the particular labels. In the City of Detroit, this Court said that's necessary in order to give due regard for State taxing power. What are the characteristics? Phillips, I'm sorry, Phillips Chemical said the same thing. There it said the argument was that Federal land was taxed differently because of its size, value, or number of employees. And what the Court said is the classification erected by Texas law is not based on such factors, and therefore, it rejected it. Correct. And that's because, as Phillips Chemical said, it's necessary to look at the way that the actual tax draws it. So what is it? What is it? I mean, what is it that the 20 towns with the police and the State sheriffs and the State deputy sheriffs and all these things, what is it they do that the Federal marshals don't do? Your Honor, the point of commonality for those who receive the exemption and those who don't is that they are State law enforcement officers who are part of a retirement plan that is open exclusively to law enforcement. That sounds like you're saying we discriminate on the basis of source. No, Your Honor, because to succeed at the similarly situated analysis, the State of West Virginia agrees that if there were a retired Federal law enforcement officer who had a retirement plan with similar characteristics, that that would be enough to succeed at this stage. Breyer. But what you say is let's look at the State plan here and let's look at the Federal plan. So you're saying they're the same people, they do the same thing. Is there discrimination? And you just seem to me to say no, but the other side says, hey, they get a tax break and we don't. Now, that sounds like discrimination. I mean, it may be justified or whatever it is, but the question is, is there discrimination?  The question is whether there is discrimination based on the source of income. And that means whether the fact that the Federal government, as opposed to the State, is signing retirement checks is the dividing line. That's not the dividing line. Could you just explain what are the unique characteristics of those who get the favorable treatment, the characteristics that distinguish them from the State employees who don't get it? What are the characteristics that they have? And then we can see whether a marshal or a deputy marshal has those characteristics. All of those characteristics go to the particular retirement plan that they're part of. It's the benefits and contributions? Benefits and contributions is part of it, yes, Your Honor. Another part of it is that their plans are only available to law enforcement officers. And those sort of plans raise particular funding considerations. Law enforcement is a high-risk profession, which means that it's more likely that members of those plans are going to have more benefits. All right. Well, we can't possibly. I'm sorry. No. Wouldn't deputy marshals have a risk, too? There are some deputy marshals who are eligible for the exemption, but not all of them. Yes. And so, but the distinction is the deputy marshals in West Virginia who receive the exemption are those who retirement benefits come from a deputy marshal only plan. The deputy marshals. Why does that matter? It matters because the State has decided that the particular funding considerations of those plans warrant separate tax treatment. And as long as the State's reason is not based on whether someone is a Federal or a State, States have incredibly broad. The nub of this, it seemed to me, that is it the case that if the State never thought of this, it wasn't against the marshals, it just developed a system that meant that they have a lot more money, less money in their pocket than comparable States. Does that violate the statute? Now, I thought the answer to that question is yes, it does violate the statute. Don't look into the State's actual reasons. Just look into whether they end up with less money in their pocket, and they're just, maybe you could say a justification, but the justification can't be, well, we have a set of complicated retirement systems that pays the State people even more. Well, Your Honor, we agree that the State's reason is not the deciding line here. The deciding line is what the State actually did. And the way to do that, as Phillips Chemical explains, is to look at the way that the favored tax class is drawn up. Kagan, So if I understand what you're saying, I think you suggested three characteristics of the members of these plans, and one is that they receive low benefits, another is that they contribute a very substantial portion of their earnings to the plan, and the third, which I'm not sure I understand, but your third, is that the plan itself is made up only of law enforcement officers, is that correct? Yes, Your Honor. Now, it seems to me that we couldn't possibly do anything, even if you were right, that if the State showed all of that, I mean, we're not in a position to rule in your favor here, at the very most, you're entitled to, or at the very most, what we should do is remand, so that the State court could figure out whether, in fact, the members of this State plan, as compared to Federal employees, receive lower benefits, make higher contributions, and are similarly in a, you know, and don't share this characteristic of a law enforcement only plan. Well, Your Honor, we agree that if this court believes that the determination of the case turns on those fact-specific inquiries, particularly on the significant differences test, the West Virginia Supreme Court would not reach them. So the State would agree that remand would be appropriate to sort out those factual issues. So then it's very interesting, because the This was not raised the first time around. Why should you get a second chance? Well, Your Honor, it was raised the first time around, both the similarly situated point and the step two significant differences. At every stage in the State court litigation, the parties argued that these taxpayers were not similarly situated to those who received the exemption. The West Virginia Supreme Court focused on a separate aspect of the analysis, focused on the doctrine's history and purpose. If this court rejects the analysis and it does not feel that there is sufficient information in the record to decide the case, then it should allow the State to continue its argument back in the State courts on its remaining argument. What strikes me about the way this argument has gone that's a little bit unexpected for me is that you and the SG actually agree. We do, Your Honor, on most parts. Because you think that the State should be able to prove that the members of this plan are different from Federal employees, notwithstanding that the State has made a non-neutral distinction. And on the contrary, Mr. Rosenberg thinks the fact that the State has made a non-neutral facial distinction is game over. Well, Your Honor, respectfully, my friend's position for Petitioners would be I'm at odds with what this Court has done before. Well, counsel, I guess I'm struggling with what Justice Kagan is. When we interpret statutes, we usually start and maybe finish with the plain language of them these days. And the statute here says if it discriminates on the basis of source, game over. I look at the West Virginia statute, and it contains none of the subtleties that West Virginia has, after the fact, imagined for its statute. It says only State law enforcement officers, period. It doesn't describe the nature of their contributions or anything else like that. Why shouldn't that be the end of the inquiry under a normal statutory interpretation analysis where we don't bother looking at secret purposes when the plain text is clear? Because, Your Honor, even under that approach, Mr. Dawson, this Petitioner is not being treated different from State employees. The fact that there may be another hypothetical Federal retiree who could bring a claim, who could bring an argument that his or her retirement plan looks very similar to the retirement plan's exemption under West Virginia law, that may be a case for another day. But that still leaves the fact that this Petitioner has not made out a claim, that he is being treated different. Sotomayor, there's never going to be an identical Federal plan to an identical State plan unless the State chooses to model its plan out of a Federal plan. This is an invitation to just throw Davies away. All the State has to say is, we're going to favor our retirees because our plan is structured in X way and the Federal plan is not. It makes no sense to me what you're saying. Well, no, Your Honor, because we're not arguing that the Court needs to look at all of the particular details of the plan, but only what is the broadest point of commonality that sweeps in all of those plans that receive the exemption and those who don't. And the State's position is that point of commonality is that there are plans that are available only to law enforcement officers. That's all that this Court has to do. And this Court may second-guess the wisdom of a State giving a tax exemption based on that criteria, but respectfully, that's not a decision for this Court or not one that's going to come into effect. So even if the two plans are identical, merely because the State chooses a police officer-only plan, that's enough of a difference to do away with Davies? Yes, Your Honor, to the extent that they are identical in terms of benefits or the way that term of service is concluded, yes, that may be true, because those aren't the distinctions in the statute. Why isn't that just plain source? It's not plain source because, as the State agrees, if there were a Federal retiree who was also part of a law enforcement-only retirement plan, then they would pass this first stage. Now, that does not mean that that statute would automatically be struck down because the State would still have the opportunity at the second stage of the analysis to show that there are significant differences. But what would be the argument for giving favorable treatment? Suppose we're just talking about categories of State employees, and you have law enforcement, you have law enforcement officers who are basically identical, but one is in a law enforcement-only plan and the other is in a plan that includes other employees. What would be the reason for treating those differently? Well, the reason we suggest is because there are special funding considerations when you have a retirement plan that's only available to those in a high-risk profession such as law enforcement. Okay. So now you're saying it's funding considerations, but it's not just the fact that they're only law enforcement officers. No, Your Honor. I'm saying that would be the justification for a State to draw a line between law enforcement only and something else. But the proper inquiry is to look at the line in the statute and then to take the State statute at its word. In this case, we give an exemption to members of law enforcement-only plans. If there were a Federal retiree who could raise that claim, that person would be similarly situated. In terms of job duties, in terms of job duties, is there a distinction that you see between the favored State employees and the disfavored State employees in terms of job duties? Yes, Your Honor. Yes, Your Honor, we believe there is. The example of a sheriff is the strongest example in this record. Mr. Dawson didn't retire as a deputy marshal. He retired as a full marshal. And Federal law says that the duties of a marshal and a deputy, for that instance, are comparable to the duties of a State sheriff, not a State deputy sheriff. And the reality is the vast — And what are the distinctions between the State — again, just on my question, the distinction between the State-favored class and the disfavored State class? I just want to — Well, with respect to sheriffs, most sheriffs, in fact, virtually all State sheriffs in West Virginia do not receive the exemption. Most of them do not because they are part of the general public employee's retirement system. How do their job duties differ? Well, the job duties are different. There are many other job duties that this Court did not — sorry, that the State Court did not reach. Those particular distinctions were not part of the consideration. So if this Court believes that the appropriate response is to look at job duties, then yes, West Virginia agrees that remand would be appropriate to flesh out those differences. Suppose a retiree had worked for 20 years as a deputy sheriff, one year as a sheriff, and then retired. What would that — how would that employee be treated? Well, if the employee had worked for 20 years as a deputy sheriff, let's assume that their deputy sheriff retirement benefits had vested, they would have the ability to receive those benefits. They would have to stop receiving them while they were a sheriff, but could receive them later. That particular employee would be able to exempt the benefits from their time as a deputy sheriff because they came from the deputy sheriff plan, not even — And why wouldn't — why wouldn't the answer be that Mr. Dawson is treated the same way? For part of — if there's a — if his duty — if he is similar to deputy sheriffs, but not to — but also, you know, during the time when he was a deputy marshal, why wouldn't the answer be to treat him the same way, to break it down that way? Because, Your Honor, I was assuming for the purposes of that question that this hypothetical deputy sheriff was part of the deputy sheriff's retirement system in West Virginia. I don't know that's true. The State has a — all of its employees are in one plan, okay? And the State says, those people get this benefit. And now you have a Federal employee who comes along and the State says, well, you don't get that benefit because you weren't in the State plan. I mean, you — you think that's okay? We would say that employee, yes, has made out a case that he or she is being treated different than similarly situated State employees. Okay. So then I don't know what you're — where you're going with the fact that it turns on whether you're in one plan or another plan. It turns on the particular components of the plan. Yes, the components of the plan, but not the mere fact that you are or are not a member of that plan. Your Honor, it does depend on whether someone is a member of the plan. But in order to determine if a similarly situated Federal employee is being treated different, we have to look at what describes that plan. What are those characteristics? And if there were a Federal employee who could show that his or her retirement plan had similar characteristics, then, yes, you would agree that person is treated different from similarly situated employees. Ginsburg. But, in fact, there is no such — we know what the Federal retirement plans are, and there's no retirement plan like these four. Correct, Your Honor. And that's — And you say — and you say that that's enough, and it doesn't matter that their job duties are identical, it doesn't matter that there are many more law enforcement officers covered, given the exemption, than the ones left out in Virginia. None of that matters, as long as they're the source of the benefits of these discreet plans. There is no such Federal plan, end of case. That's your position? Yes, Your Honor, that's what this Court held in Jefferson County. There, the Federal taxpayers made an argument that it was impossible for them to ever qualify for the county exemption. This Court said that was not enough to strike down the statute. I thought the Court said in Jefferson County that State judges and Federal judges were treated the same. They did say they were treated the same. And job duties was relevant there because the statute drew distinctions based on individuals who were members of covered professions who did or did not pay other State license fees. So that — I began to see this as a different issue than I had initially thought. So don't say I'm right if I'm wrong, okay? All right. And if I'm off base, just say it. But the statute says you cannot tax the pay of a — or compensation of a Federal official if the tax — unless the tax does not discriminate because of the source of the pay or compensation. Okay? So then we have some money that the marshals get. And they put that money into a Federal fund, which is a retirement fund. And the State in its taxation discriminates against them, but not because of their pay or compensation, but rather because of the nature of the retirement fund that they put it in. Is that what you're saying? Yes. If the distinction is based on the type of retirement fund — and again, the only reason that distinction matters is because that's the distinction in the State tax code. And in Phillips Chemical, this Court said that is the line the Court should look at. How has the State drawn the favor of that? Okay. So where did I get — I didn't — for some reason, it's not necessarily your fault, but I — this is a fairly simple point. Look at the retirement fund, and if that's the basis for the discrimination against the Federal employees, that's fine. That isn't their pay or compensation. And that's what we should be looking at. Your Honor, I would add to that. Is that right? Yes, but I would add to that. But I didn't get that out of the brief too well, but maybe that's my fault. Okay. Well, if the distinction is that it's a Federal retirement plan and that is the reason that someone is or is not in the favored class, then that would be discriminatory under the doctrine. But that's not what this West Virginia tax regime is doing, because the reality is there are many State — State retirees, over 98 percent, who are in the disfavored class, and there are many State law enforcement officers, some with identical jobs, who are also in the disfavored class. It seems to me that Davis makes it very clear that that's not a significant consideration. If you have a small retirement benefit and say, this is available for all people who do X, unless you're paid from a Federal plan, would that violate Davis or not? You have 99 percent of the State employees are not eligible for it, but it says, if you're in this category, a tiny category, you get the benefit, unless you're a Federal retiree. Well, Your Honor, the first question would be whether the particular challenger is, in fact, in that tiny category. Yeah, yeah. But that first question was not the one I asked. I asked a different one, which is, you argued that, well, it depends on how many of the State employees are eligible or not. And I thought Davis said specifically it doesn't. It depends upon the source. So if it's five employees in the State and there's one who's a Federal employee and your plan says these five get it and no Federal employee gets it, does that violate Davis or not? Your Honor, in that case, it probably would. And that's because we're not saying that the sheer small number of employees who are benefitted or not matters. It's relevant, though, because this tax regime treats 98 percent of State employees differently than others. Well, you just said it doesn't matter, and then you tell me it matters. Well, Your Honor, it matters only because it's indication that the actual dividing line in the State tax code is not State versus Federal. Something else is the dividing line. Here, the dividing line is the particular plans that they're part of, and also if this is a significant differences standpoint, then the State would be able to show that there are vastly different contribution levels. On job duties, if we conclude that that's most significant, were Dawson's job duties similar to the duties of the favored State employees? They were similar, yes, Your Honor, but that does not end the inquiry because they were just as similar to the disfavored State law enforcement employees. Okay. And your opposing counsel says in that circumstance where you're similar to both the favored and the disfavored State employees, that the State is required to go with the favored State employees as the treatment for the Federal employees, if you're following me. Why is your opposing counsel wrong on that point? Because courts are never required to turn a blind eye to evidence in the record that shows that the comparison class the plaintiff has brought forward is inappropriate. Well, why is it inappropriate? That's the point. They're both appropriate in that circumstance in the sense that they're similarly situated to both the favored and the disfavored. That's what you just said, I think. Because it doesn't show what the actual dividing line is in that case. We know the dividing line is not between those who have certain job duties or not because a police officer who lives five miles away from another police officer may have vastly different State tax treatment with identical job duties. That's not how the State tax is drawing the distinction. But I think the only way to be sure in that circumstance that we're describing that you're not discriminating against the Federal employees is to give them the treatment that the favored State employees get. If you give them the treatment that the disfavored State employees get, you're never going to be sure whether that's based on discrimination against the Federal government or not. And that's what the statute seems to target, making sure that there's not discrimination against the Federal employees. Your Honor, this Court has never held a most favored taxpayer statute. In fact, in Jefferson County, that was just as true there. Because there were many State officers who received the exemption and did not. This Court found that the fact that there were some who were like the Federal challengers there in the disfavored class, that was enough to find that similarly situated taxpayers were in fact treated the same. No matter what other issues may exist for another day for another Federal employee, this one is treated the same. Roberts. Thank you, counsel. Four minutes, Mr. Rosenberg. I just have a few points in rebuttal. First of all, in response to the question that Justice Breyer and the Chief Justice posed at the end, this plainly is discrimination based on the source. If you're in the State plans, you get the exemption. No Federal plans get the exemption. That is classic discrimination based on source. Secondly, there is no reason for remand. And I do think that the space between me and my brother from the Solicitor General's office is actually much smaller than it appears. What I think the Solicitor General was saying is that there's no question that at Step 1 of Davis, this is facially discriminatory, it violates the law. The question is, are U.S. Marshals the right plaintiffs? And before the State had articulated its reasons for arguing that they were, the government said maybe a remand would be appropriate. Here, however, we know what the State has argued. The State has argued these financial considerations that plainly are not the line that the State drew. The record itself, the joint appendix, establishes that the factors that the State argues were not even-handedly drawn. In this circumstance, there is no reason for a remand. Moreover, many of the financial arguments that the State raised were rejected. Sotomayor, I'm sorry. Sotomayor, there are a lot of generalities. Give me specifics. Sorry. Okay. Specifically, what I was going to say is, if you talk about the amount of compensation or the entitlement to Social Security, right, we know that those are not even-handedly applied because we know that some State plans that have higher benefits get the exemption, some don't. We know that some entitlement to Social Security gets the exemption, some don't. We know some higher contribution rates get the exemption, some don't. That's joint appendix page 28 and 29. That chart shows that clearly, right? So we know that they weren't the basis for the line that the State drew, and they're not even-handedly applied. Moreover, many of those arguments were raised in the circuit court, and the circuit court rejected them and said Davis precludes them because they're just ultimately an argument about the amount of compensation. And if the State were going to draw the line based on that, it would have drawn the line neutrally based on the line of compensation, not done it the way it did, which was to discriminate based on source. So none of these are legally relevant, and therefore, a remand is not appropriate. Third, the burden on the State here is rather light. Under Davis, all we're asking for is for the States to draw facially neutral lines, and that is not a difficult burden. There are no State amici in this case supporting West Virginia, and that suggests that nobody is up in arms other than West Virginia about the issues here. Finally, with respect to the record, my friend argues about sheriffs and deputy sheriffs, but if you look at page 17 of our reply brief, we cite the State's brief at page 12, and West Virginia Code section 714D24, if you were a deputy sheriff or a State trooper and then became a sheriff, you're still covered. And there's nothing in the record that indicates that most sheriffs weren't previously deputy sheriffs or State troopers. So the sheriff distinction that the State makes isn't supported here, and the record doesn't justify this notion that counsel mentioned about law enforcement-only plans. The plans that the State gives the exemption to are law enforcement and firefighter plans, so it's not a law enforcement-only plan. And that particular distinction has never been raised before and simply doesn't matter. Look, at bottom here, in McCulloch v. Maryland, the Court said that in general, we don't want to be micromanaging all the details of State taxation. Here, the categorical rule of Davis is the right rule. It prevents facially discriminatory tax schemes like West Virginia's. It has a fairly limited inquiry and doesn't burden the States nearly as much. The Court should reverse. No remand on the merits is necessary. Roberts. Thank you, counsel. The case is submitted.